OPINION
{¶ 1} Appellant, Robert S. Bulman, appeals the judgment entered by the Chardon Municipal Court. Following a bench trial, Bulman was convicted of domestic violence and disorderly conduct.
 {¶ 2} Bulman married Marci Bulman ("Marci") in April 2004. Bulman and Marci were divorced in January 2007. In October 2006, prior to their divorce becoming final, Bulman and Marci were separated and lived in different residences. *Page 2 
 {¶ 3} On October 25, 2006, Bulman was with Marci at her residence in Chardon, Ohio. Bulman and Marci began arguing. While Marci was applying mascara, Bulman shoved her left hand and the mascara wand entered Marci's left eye. Thereafter, Bulman pulled a telephone/fax machine from the wall. Marci began to go up the stairs, but Bulman grabbed her legs and pulled her down the stairs. Marci sustained injuries to the cornea of her left eye and bruises on her right knee.
 {¶ 4} Following the incident with the mascara wand, Marci sought treatment for her eye at a local eye doctor's office. Marci wore a patch over her left eye for four days. While Marci was being examined, one of the employees of the eye doctor's office contacted the Chardon Police Department regarding Marci's injury. Patrolman Bryon Childs responded to the eye doctor's office and took Marci's written statement. In addition, Patrolman Childs photographed Marci's knee and patch-covered eye. Deputy Dee Spangenberg of the Geauga County Sheriff's Department took a written statement from Bulman.
 {¶ 5} Following the incident, an order of protection was filed, which required Bulman to surrender his firearms. Initially, Bulman provided an inoperable key to his gun safe. However, after being informed that the initial key did not work, Bulman provided Patrolman Jason Elam of the Chardon Police Department with a proper key.
 {¶ 6} Bulman was charged in the Chardon Municipal Court with domestic violence, in violation of R.C. 2919.25(A) and a first-degree misdemeanor, and disorderly conduct, in violation of R.C. 2917.11(A)(1) and (2) and a minor misdemeanor.[1] Bulman pled not guilty to these charges. *Page 3 
 {¶ 7} In addition to the charges in municipal court, Marci filed a petition for a domestic violence protection order in the Geauga County Court of Common Pleas. Following an evidentiary hearing, Marci's petition was dismissed by the common pleas court.
 {¶ 8} Regarding the charges in municipal court, the matter proceeded to a bench trial. There was no court reporter present for the trial. Instead, the proceedings were recorded by videotape.
 {¶ 9} At the beginning of the trial, Bulman moved to dismiss the disorderly conduct charge because the state referred to the language in R.C. 2917.11(E)(3)(a) and the complaint only contained language pursuant to R.C. 2917.11(A)(1) and (2); it did not contain the (E)(3)(a) language. This was significant, because the language in (E)(3)(a) contains an additional element, which makes the offense of disorderly conduct a fourth-degree misdemeanor, instead of a minor misdemeanor. In response to Bulman's motion to dismiss, the state orally moved to amend the complaint to reflect a charge of R.C. 2917.11(E)(3)(a). The trial court reserved its ruling on the state's motion to amend the complaint.
 {¶ 10} Marci, Patrolman Childs, Patrolman Elam, and Deputy Spangenberg testified for the state. Following the state's case-in-chief, the trial court granted the state's motion to amend the complaint. Also, Bulman moved to dismiss the charges against him, presumably pursuant to Crim. R. 29. The trial court denied Bulman's motion with respect to the domestic violence and disorderly conduct charges.[2] Bulman *Page 4 
did not call any witnesses. The trial court found Bulman guilty of domestic violence and disorderly conduct. The trial court deferred the sentencing hearing.
 {¶ 11} Bulman filed a motion for new trial pursuant to Crim. R. 33. The basis of Bulman's motion was that the videotape of the bench trial was of such poor quality that it could not be transcribed. The state filed a brief in opposition to Bulman's motion for a new trial.
 {¶ 12} Bulman filed a proposed testimony of Marci from the trial. Also, the state filed its proposed version of the testimony from trial. Thereafter, Bulman filed a "proposed amendment to statement of evidence of proceedings." Attached to the pleading is an affidavit from Carmen Cefaratti, a licensed court reporter. Cefaretti states that the videotape from the trial was unable to be transcribed due to its poor audio quality. The trial court filed a "statement of the evidence or proceedings" pursuant to App. R. 9(C).
 {¶ 13} In November 2007, a sentencing hearing was held. The trial court fined Bulman $150 for his disorderly conduct conviction. In regard to his domestic violence conviction, the trial court fined Bulman $1000, with $500 suspended, and sentenced Bulman to 180 days in jail, with 120 days suspended. Of the 60 days that Bulman was required to serve, the trial court ordered that he serve 15 days in jail with no work release, 15 days in jail with work release, and 30 days of electronically-monitored house arrest, also with work release. On Bulman's motion, the trial court stayed execution of the sentence pending Bulman's appeal to this court.
 {¶ 14} Bulman raises four assignments of error. We will address Bulman's assigned errors out of numerical order. Bulman's third assignment of error is: *Page 5 
 {¶ 15} "The trial court abused its discretion and erred to the prejudice of appellant by permitting the state of Ohio to amend the disorderly conduct complaint from a charged violation of ORC2917.11(A)(1) and (2) to a charged violation of ORC 2917.11(E)(3)(a)."
 {¶ 16} Bulman contends the trial court erred by allowing the state to amend the complaint. Amendment of a criminal complaint is governed by Crim. R. 7(D), which provides, in part:
 {¶ 17} "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impanelled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury."
 {¶ 18} Initially, we will determine whether the amendment of the complaint changed the name or identity of the crime charged. "`Whether an amendment changes the name or identity of the crime charged is a matter of law.'" State v. Davis, 4th Dist. No. 06CA26, 2007-Ohio-2249, at ¶ 15, quoting State v. Kittle, 4th Dist. No. 04CA41, *Page 6 2005-Ohio-3198, at ¶ 12. (Secondary citations omitted.) Accordingly, we will apply a de novo standard of review for this issue. Id.
 {¶ 19} We note that the Fourth and Twelfth Appellate Districts have held that an amendment that increases the severity of the crime is prohibited by Crim. R. 7(D), since the amendment effectively changes the identity of the crime. See State v. Davis, 2007-Ohio-2249, at ¶ 24;State v. Fairbanks, 172 Ohio App.3d 766, 2007-Ohio-4117, at ¶ 21.
 {¶ 20} The Supreme Court of Ohio recently ruled in the State v.Davis case, which was on appeal from the Fourth District. The Supreme Court of Ohio held:
 {¶ 21} "Crim. R. 7(D) does not permit the amendment of an indictment when the amendment changes the penalty or degree of the charged offense; amending the indictment to change the penalty or degree changes the identity of the offense." State v. Davis, Slip Opinion No. 2008-Ohio-4537, syllabus.
 {¶ 22} In Davis, the Supreme Court of Ohio held that changing the degree of a felony offense after a defendant was indicted violated the defendant's constitutional right to be charged by indictment by the grand jury. Id. at ¶ 12. Specifically, the court held, "[i]f a court were permitted to amend an indictment to increase the penalty or degree of the offense, the court would be able to `convict the accused on a charge essentially different from that found by the grand jury.'" Id., quoting State v. Headley (1983), 6 Ohio St.3d 475, 478-479.
 {¶ 23} There is a significant distinction between the amendment of a misdemeanor complaint, as occurred in this case, and the amendment of a criminal indictment, as occurred in State v. Davis, 2008-Ohio-4537, at ¶ 2-3. This distinction is that the amendment of an indictment by increasing the degree of the charged crime circumvents the defendant's right to be charged by a grand jury for felony offenses. *Page 7 
 State v. Davis, 2008-Ohio-4537, at ¶ 12. However, in a misdemeanor setting, the defendant does not have a right to be charged by the grand jury. See, e.g., State v. Hartman (1988), 61 Ohio App.3d 729, 734, citing Section 10, Article I, Ohio Constitution. Thus, the amendment of a criminal complaint in a misdemeanor case by increasing the degree of the offense does not interfere with that right.
 {¶ 24} In the case sub judice, the complaint charged Bulman with a violation of R.C. 2917.11(A)(1) and (2), which provide:
 {¶ 25} "(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:
 {¶ 26} "(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;
 {¶ 27} "(2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person[.]"
 {¶ 28} Following the amendment, the (E)(3)(a) language was added to the complaint. These sections provide:
 {¶ 29} "(E)(1) Whoever violates this section is guilty of disorderly conduct.
 {¶ 30} "(2) Except as otherwise provided in division (E)(3) of this section, disorderly conduct is a minor misdemeanor.
 {¶ 31} "(3) Disorderly conduct is a misdemeanor of the fourth degree if any of the following applies:
 {¶ 32} "(a) The offender persists in disorderly conduct after reasonable warning or request to desist." *Page 8 
 {¶ 33} This court has previously addressed an identical situation where the state amended a complaint to include language that would increase a disorderly conduct charge to a fourth-degree misdemeanor.Niles v. Kostur (Dec. 14, 1990), 11th Dist. No. 89-T-4318, 1990 Ohio App. LEXIS 5549, at *4. This court held, "the identity of the crime has not been changed. Appellant was charged with disorderly conduct and after the amendment was still charged with disorderly conduct."[3] Id.
 {¶ 34} In this matter, while the original complaint charged Bulman with a violation of R.C. 2917.11(A)(1) and (2) and it did not include language pursuant to subsections (E)(3)(a), we note the complaint specified the degree of the offense as a fourth-degree misdemeanor. Thus, in the case sub judice, the amendment of the complaint to include (E)(3)(a) language did not change the name or identity of the crime charged. This is because the original complaint, as well as the amended version of the complaint, both charged Bulman with disorderly conduct and both designated the offense as a fourth-degree misdemeanor.
 {¶ 35} Our second inquiry is whether the amendment went to the substance of the complaint and, if so, was Bulman prejudiced by the trial court's actions. "If an amendment does not change the name or identity of the crime charged, we review the trial court's decision under an abuse of discretion standard." State v. Cunningham, 10th Dist. No. 06AP-145, 2006-Ohio-6373, at ¶ 17, citing State v. Kittle,2005-Ohio-3198, at ¶ 13 and State v. Beach, 148 Ohio App.3d 181,2002-Ohio-2759, at ¶ 23. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that *Page 9 
the court's attitude is unreasonable, arbitrary or unconscionable."State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 36} The amendment in this matter absolutely went to the substance of the complaint. From the original complaint, it was not certain whether Bulman was being charged with disorderly conduct as a minor misdemeanor or as a fourth-degree misdemeanor. The amendment sought to clarify this confusion by adding language pursuant to R.C. 2917.11(E)(3)(a) to make the offense a fourth-degree misdemeanor.
 {¶ 37} We disagree with the trial court's conclusion that Bulman was not prejudiced by the amendment to the complaint. This court has previously held "[a]mendments of misdemeanor complaints should be allowed, if the defendant still has a reasonable opportunity to preparehis defense and the amendments simply clarify or comply in a manner consistent with the original complaint." Niles v. Kostur, 1990 Ohio App. LEXIS 5549, at *4, citing Cleveland Heights v. Perryman (1983),8 Ohio App.3d 443, 446. (Emphasis added.) In Niles v. Kostur, the trial court granted the state's motion to amend the indictment prior to the beginning of the trial. Id. at *2. In the instant matter, the trial court reserved ruling on the state's motion to amend the complaint untilafter the state's case-in-chief. Thus, Bulman was forced to defend himself against a charge without knowing exactly what the charge against him was. As such, Bulman did not have a reasonable opportunity to prepare his defense. Therefore, Bulman was prejudiced by the trial court's decision to permit the state to amend the indictment.
 {¶ 38} The trial court abused its discretion by amending the complaint after all of the evidence was presented. *Page 10 
 {¶ 39} Since the trial court abused its discretion by amending the complaint, Bulman was only charged with the minor-misdemeanor version of disorderly conduct. The proposed amendment added an additional element to the underlying version of the offense. Thus, in finding that Bulman committed the enhanced version of disorderly conduct, the trial court necessarily found that Bulman committed the lesser offense of disorderly conduct, as a minor misdemeanor. Accordingly, we are modifying the trial court's judgment to reflect a conviction for minor-misdemeanor disorderly conduct, in violation of R.C. 2917.11(A)(1) and (2), instead of a fourth-degree misdemeanor offense.
 {¶ 40} Further, whether or not the trial court ultimately amended the complaint, throughout the trial Bulman was aware that he would have to defend against the elements contained in the minor-misdemeanor version of disorderly conduct, as charged in the complaint as a violation of R.C. 2917.11(A)(1) and (2). Therefore, Bulman is not prejudiced by our decision to modify the trial court's judgment.
 {¶ 41} Bulman's third assignment of error has merit to the extent indicated.
 {¶ 42} Bulman's fourth assignment of error is:
 {¶ 43} "The trial court erred to the prejudice of the appellant by convicting the appellant of both domestic violence and the lesser included offense of disorderly conduct."
 {¶ 44} While Bulman phrases his argument as an allegation that disorderly conduct is a lesser-included offense of domestic violence, it appears his true argument is that the two offenses are allied offenses of similar import. This is because he argues that he should not have been convicted of both offenses. See R.C. 2941.25(A). *Page 11 
 {¶ 45} Prior to addressing the merits of Bulman's argument, we will review the procedural occurrences regarding the potential merger of these offenses at the trial court level. The following colloquy occurred during Bulman's sentencing hearing:
 {¶ 46} "THE COURT: All right. Well, [the] maximum in this case would be a $1,000 fine, 180 days in jail on the domestic violence, and the disorderly, that was an M-4, wasn't it, Ken?
 {¶ 47} "[Defense counsel Ken Bossin]: I thought it was a minor misdemeanor —
 {¶ 48} "THE COURT: A minor misdemeanor?
 {¶ 49} "MR. BOSSIN: But in any event, the court has said it's a lesser included offense, so I would think that it would be merged.
 {¶ 50} "THE COURT: It would be merged, it was an M-4, okay."
 {¶ 51} However, later in the sentencing hearing, when imposing Bulman's sentence, the trial court stated:
 {¶ 52} "[W]ith respect to the disorderly conduct charge, it will be $150 fine and court costs. With respect to the domestic violence charge $1,000 fine, $500 suspended, 180 days in jail, 120 suspended. * * *"
 {¶ 53} Further, in its judgment entry, the trial court indicated that Bulman was convicted of both domestic violence and disorderly conduct, and the court imposed sentences for each offense consistent with its comments at the sentencing hearing. Accordingly, the trial court did not treat the two offenses as allied offenses of similar import.
 {¶ 54} Ohio's multiple count statute is R.C. 2941.25, which provides: *Page 12 
 {¶ 55} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 56} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 57} The Supreme Court of Ohio has held:
 {¶ 58} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import." State v. Cabrales,118 Ohio St.3d 54, 2008-Ohio-1625, syllabus.
 {¶ 59} The Supreme Court of Ohio recently revisited its analysis of allied offenses of similar import. State v. Brown, 119 Ohio St.3d 447,2008-Ohio-4569. While generally upholding its prior holding regarding the two-tier test for allied offenses of similar import set forth inState v. Rance (1999), 85 Ohio St.3d 632 and clarified in State v.Cabrales, supra, the court addressed the additional factor of "`whether the legislature manifested an intention to serve two different interests in enacting the two statutes.'" State v. Brown, 119 Ohio St.3d 447,2008-Ohio-4569, at ¶ 1-40, 35. (Citation omitted.) *Page 13 
 {¶ 60} In this matter, we conclude that the legislature manifested an intention to serve two different interests in enacting domestic violence, in violation of R.C. 2919.25(A), and disorderly conduct, in violation of R.C. 2917.11(A)(1) and (2). The relevant section of the domestic violence statute was designed to protect a family or household member from physical harm. Meanwhile, the pertinent sections of the disorderly conduct statute are intended to protect "the public peace" by prohibiting certain acts that cause alarm, inconvenience, or annoyance to another person.
 {¶ 61} We now turn our analysis to the first prong of the test annunciated in State v. Cabrales, which is comparing the elements of offenses to determine whether the commission of one offense will result in the commission of the second offense. State v. Cabrales,118 Ohio St.3d 54, syllabus. The offense of domestic violence requires the victim to be a "family or household member." R.C. 2919.25(A). However, the disorderly conduct statute does not contain this requirement. R.C. 2917.11. Therefore, if the victim of a disorderly conduct offense is not a family or household member of the offender, it is possible to commit disorderly conduct without committing domestic violence.
 {¶ 62} Next, we will consider whether it is possible to commit domestic violence, in violation of R.C. 2919.25(A), without also committing disorderly conduct, in violation of R.C. 2917.11(A)(1) and (2). In support of his argument, Bulman cites the Supreme Court of Ohio's decision in Shaker Hts. v. Mosley, 113 Ohio St.3d 329,2007-Ohio-2072. We note the Mosley Court held that "[m]inor misdemeanor disorderly conduct under R.C. 2917.11(A)(1) is a lesser includedoffense of domestic violence under * * * R.C. 2919.25(C)." Id. at syllabus. (Emphasis added.) Even though the Supreme Court of Ohio held that disorderly conduct under R.C. 2917.11(A)(1) is a lesser-included offense *Page 14 
of domestic violence under R.C. 2919.25(C), it did not address whether the offenses were allied offenses of similar import.
 {¶ 63} Additionally, the Supreme Court of Ohio limited its analysis to Section (C) of 2919.25. Id. at ¶ 17. The court specifically distinguished the facts before it from cases, such as the one sub judice, that concern R.C. 2919.25(A). Id. The court noted that appellate courts have found that it is possible for an offender to commit domestic violence by attempting to cause physical harm without causing inconvenience, alarm, or annoyance. Id. at ¶ 16, citing State v.Blasdell, 155 Ohio App.3d 423, 2003-Ohio-6392, at ¶ 21, citing State v.Schaefer, 2d Dist. No. 99 CA 88, 2000 Ohio App. LEXIS 1828. The following scenario demonstrates this position: "the perpetrator throws an object at the victim who is not looking at the perpetrator, but misses the target, and thus the victim suffers no inconvenience, annoyance, or alarm." Id. While this reasoning was applied in a lesser-included-offense analysis, we believe it is applicable to an allied-offense-of-similar-import analysis. Under the above scenario, it is possible to commit domestic violence, in violation of R.C. 2919.25(A), without committing minor-misdemeanor disorderly conduct, in violation of R.C. 2917.11(A)(1) and (2).
 {¶ 64} Under the facts of this case, domestic violence, in violation of R.C. 2919.25(A), and minor-misdemeanor disorderly conduct, in violation of R.C. 2917.11(A)(1) and (2), are not allied offenses of similar import. Thus, Bulman could be convicted of both offenses.
 {¶ 65} Bulman's fourth assignment of error is without merit.
 {¶ 66} Bulman's first assignment of error is:
 {¶ 67} "The trial court abused its discretion by denying appellant's motion for a new trial on the grounds that no trial transcript could be produced for purposes of this *Page 15 
appeal, in violation of the appellant's right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Constitution of the state of Ohio."
 {¶ 68} Bulman filed a motion for a new trial due to the poor quality of the videotape and the fact that it could not be transcribed.
 {¶ 69} "A reviewing court will not disturb a trial court's decision granting or denying a Crim. R. 33 motion for a new trial absent an abuse of discretion." State v. LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, at ¶ 82, citing State v. Schiebel (1990), 55 Ohio St.3d 71, 76.
 {¶ 70} Bulman moved for a new trial pursuant to Crim. R. 33, which provides, in relevant part:
 {¶ 71} "(A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 {¶ 72} "(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;
 {¶ 73} "* * *
 {¶ 74} "(3) Accident or surprise which ordinary prudence could not have guarded against[.]"
 {¶ 75} The Supreme Court of Ohio has held that "[i]n the event the defendant's misconduct is determined not to be the cause of the nonproduction of the appellate record, absence of the record may require reversal of the underlying conviction and the grant of a new trial."State v. Jones (1994), 71 Ohio St.3d 293, 297. (Citations omitted.) In this matter, the audio on the videotape of the trial is of such poor quality that it is *Page 16 
impossible to create a transcript of the bench trial. Further, Bulman is not responsible for the nonproduction of the trial transcript, as it appears the sole cause of the lack of a transcript is the poor quality of the videotape. However, our inquiry does not end here. Bulman was only entitled to a new trial "if, after all reasonable solutions are exhausted, an appellate record could not be compiled." Id. at 298.
 {¶ 76} App. R. 9(C) provides a process by which a statement of the evidence may be created to cure the defect of the lack of a transcript. This was one of the "reasonable solutions" to create an appellate record that the Supreme Court of Ohio referred to in State v. Jones. Id. at 297-298. In this matter, the procedure in App. R. 9(C) was followed. First, Bulman provided a proposed statement of the evidence. Then, the state filed its own proposed statement of the evidence. Finally, the trial court entered its own statement of the evidence.
 {¶ 77} We note that Bulman has not objected to the trial court's statement of the evidence. Moreover, while Bulman's proposed statement of the evidence only summarized Marci's testimony, we note that his proposed statement is substantially similar to the state's proposed statement of the evidence and, more significantly, the trial court's final statement of the evidence. Both Bulman's proposed statement of the evidence and the trial court's final statement of the evidence reveal that Marci testified that: (1) Bulman injured her eye by shoving her left hand, causing the mascara wand to go into her eye; (2) Bulman pulled the telephone/fax machine out of the wall; and (3) Bulman grabbed her and pulled her down the stairs and, as a result, her right knee was bruised. In addition, they both acknowledge that Marci testified on cross-examination that while she told the common pleas court magistrate that Bulman's actions were an accident, his actions were intentional and she meant "incident" instead of "accident." *Page 17 
Bulman's proposed statement indicates Marci testified that she agreed not to report Bulman's actions to the police if he signed a document agreeing to give her certain money. Although the trial court's statement of evidence does not reflect this testimony, the trial court notes that the document itself was admitted as an exhibit during trial.
 {¶ 78} While there are a few minor differences between Bulman's proposed statement of the evidence and the trial court's statement of the evidence, these differences are inconsequential. This is because the state presented sufficient evidence to support Bulman's domestic violence and minor-misdemeanor disorderly conduct convictions, even when the evidence is viewed only as presented in Bulman's proposed statement of evidence.
 {¶ 79} In this matter, an accurate record was created through the use of App. R. 9(C). Thus, the absence of a transcript of the hearing has not prejudiced Bulman. Accordingly, the trial court did not abuse its discretion by denying Bulman's motion for a new trial.
 {¶ 80} Bulman's first assignment of error is without merit.
 {¶ 81} Bulman's second assignment of error is:
 {¶ 82} "The judgments of conviction for domestic violence and disorderly conduct are against the manifest weight of the evidence, in violation of appellant's right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution."
 {¶ 83} In determining whether a criminal conviction is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide: *Page 18 
 {¶ 84} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997),78 Ohio St.3d 380, 387. (Citations omitted.)
 {¶ 85} Bulman was charged with domestic violence, in violation of R.C. 2919.25, which provides, in part:
 {¶ 86} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member."
 {¶ 87} Since Marci was married to Bulman on October 25, 2006 and had previously lived with him, she was a family member of Bulman's pursuant to R.C. 2919.25(F)(1)(a)(i). Further, Marci testified that Bulman injured her eye by intentionally pushing her hand, resulting in her mascara wand entering her eye. Also, she testified that Bulman injured her knee by pulling her down the stairs. Thus, the state presented evidence going to all the elements of domestic violence.
 {¶ 88} In the case sub judice, the complaint charged Bulman with a violation of R.C. 2917.11(A)(1) and (2), which provide:
 {¶ 89} "(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:
 {¶ 90} "(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior; *Page 19 
 {¶ 91} "(2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person[.]"
 {¶ 92} Marci testified that Bulman (1) shoved her arm, causing her mascara wand to enter her eye; (2) pulled a telephone/fax machine out of the wall, and (3) grabbed her leg when she was going up the stairs, causing her to bruise her knee. Any of the events could support a conviction for minor-misdemeanor disorderly conduct, in that Bulman could have caused Marci to be inconvenienced, annoyed, or alarmed by engaging in "violent or turbulent behavior." Thus, the state presented evidence going to all the elements of disorderly conduct.
 {¶ 93} Bulman argues that Marci's testimony was not credible. We note the weight to be given to the evidence and the credibility of witnesses are primarily matters for the trier-of-fact to decide. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Also, in assessing the witnesses' credibility, the trial court, as the trier-of-fact, had the opportunity to observe the witnesses' demeanor, body language, and voice inflections. State v. Miller (Sept. 2, 1993), 8th Dist. No. 63431, 1993 Ohio App. LEXIS 4240, at *5-6. Thus, the trial court was "clearly in a much better position to evaluate the credibility of witnesses than [this] court." Id. at *6.
 {¶ 94} Bulman introduced copies of the magistrate's decision and the trial court's judgment entry from the common pleas court action, where Marci's petition for a civil protection order was dismissed. The magistrate found that Bulman did not knowingly cause physical harm to Marci. However, it is important to note that the magistrate found that Marci described the incident with the mascara wand "as accidental." At trial in the instant matter, Marci acknowledged that she may have used the word "accident" when *Page 20 
describing Bulman's actions, but that she meant "incident." Further, she specifically testified that Bulman's conduct in shoving her arm was intentional. The trial court was in the best position to evaluate the credibility of Marci's testimony in light of her prior statement that Bulman's conduct was an accident.
 {¶ 95} Bulman also argues that Marci did not complain of her injured knee in her statement to the police. However, she did mention in her statement to the police that she was grabbed by Bulman while she was on the stairs. This was generally consistent with her trial testimony. Further, Patrolman Childs testified that he took pictures of Marci's knee. The fact that pictures were taken of Marci's knee suggests that she reported some type of injury to her knee to Patrolman Childs.
 {¶ 96} Finally, Bulman argues that Marci had a financial incentive to fabricate the story since the parties were going through a divorce. We note that Marci testified that her and Bulman's divorce was final by the time of the trial in the instant matter. Also, in assessing Marci's credibility, the trial court was aware of the fact that Marci is Bulman's ex-wife and their relationship was antagonistic.
 {¶ 97} Bulman contends the fact Marci had him sign a document agreeing to pay her in lieu of her contacting the police is evidence of her financial motivation. The record does not support Bulman's assertion that Marci agreed not to contact the police. However, even assuming that Marci did so agree, we do not believe this agreement renders her testimony incredible. In her statement to the police, Marci indicated that the argument on October 25, 2006 concerned money. The fact that she attempted to work out an agreement in which Bulman would pay her does not necessarily indicate that her testimony was incredible. *Page 21 
 {¶ 98} The trial court did not lose its way or create a manifest miscarriage of justice by finding Bulman committed the offenses of domestic violence and disorderly conduct.
 {¶ 99} Bulman's second assignment of error is without merit.
 {¶ 100} The judgment of the trial court is affirmed in relation to Bulman's domestic violence conviction. The judgment of the trial court regarding Bulman's disorderly conduct conviction is modified to a minor misdemeanor in violation of R.C. 2917.11(A)(1) and (2). Thereafter, the judgment of the trial court regarding Bulman's disorderly conduct conviction is affirmed as modified.
 {¶ 101} Since Bulman now stands convicted of the minor-misdemeanor version of disorderly conduct instead of the fourth-degree misdemeanor version, the trial court needs to resentence him on this conviction. Moreover, we note that the trial court's sentence for the domestic violence conviction contained specific dates and times that Bulman was to report to jail. These dates have all expired. Thus, we believe resentencing on both charges is appropriate. This matter is remanded to the trial court to resentence Bulman on his domestic violence and minor-misdemeanor disorderly conduct convictions.
MARY JANE TRAPP, J., concurs in part and concurs in judgment only in part with Concurring Opinion.
COLLEEN MARY O'TOOLE, J., dissents with Dissenting Opinion.
[1] While a violation of R.C. 2917.11(A)(1) and (2) is a minor misdemeanor, the complaint indicated that this offense was a fourth-degree misdemeanor.
[2] The trial court granted Bulman's motion to dismiss in relation to a charge of violating a civil protection order. There is nothing in the record before this court pertaining to this charge. It appears this charge had a separate case number at the trial court level and was tried with the domestic violence and disorderly conduct charges.
[3] We note that while this court did not find error in regard to the amendment of the complaint, this court ultimately dismissed the charges against the appellant in Niles v. Kostur due to a speedy-trial violation. Niles v. Kostur, 1990 Ohio App. LEXIS 5549, at *6-7. *Page 22