[Cite as *State v. Haney*, 2013-Ohio-2823.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-L-098** |
| JAMES A. HANEY, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas.
Case No. 11 CR 000690.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Matthew C. Bangerter*, 1360 West 9th Street, Suite 200, Cleveland, OH 44113 (For Defendant-Appellant).


TIMOTHY P. CANNON, P.J.

{¶1} Appellant, James A. Haney, Jr., appeals the jury verdict finding him guilty of the following: identity fraud, a first-degree felony in violation of R.C. 2913.49(B)(1); theft from an elderly person, a first-degree felony in violation of R.C. 2913.02(A)(3); forgery, a second-degree felony in violation of R.C. 2913.02(A)(3); telecommunications fraud, a third-degree felony in violation of R.C. 2913.05; and aggravated theft, a second-degree felony in violation of R.C. 2913.02(A)(3). Each count contained forfeiture

specifications under R.C. 2941.1417 and R.C. 2981.04.  For the following reasons, we affirm the trial court's judgment.

{¶2}   The facts of this case are relatively undisputed.  During the jury trial, appellant did not dispute his conduct, i.e., that he utilized his father's personal identifying information to obtain and cash monies from his father's annuities during the last months of his father's life.  However, appellant claimed that although he was disinherited from his father's will, his father, prior to his death, had given him permission to engage in such acts.

{¶3}   The jury heard that appellant's father, James A. Haney, Sr., changed his will in 2009 disinheriting appellant due to his criminal past and the fact that he owed a significant sum in child support.  Appellant admitted he was upset by this change. Appellant testified that while his father was in the hospital, he took his father's "dinner bucket," the place where his father stored all of his personal paperwork.  Appellant took the original paperwork contained in the "dinner bucket," made copies of the paperwork, and put the copies back into the "dinner bucket."

{¶4}   The two annuities at issue are from Lincoln Financial Group and Western National Life Insurance Company, neither of which named appellant as a beneficiary. Beginning when appellant's father was in the hospital, appellant called Lincoln Financial and indicated that he was James Haney, Sr.  Appellant provided Lincoln Financial with his father's personal identifying information, including his date of birth and social security number.  Appellant then completed paperwork from Lincoln Financial to cause a distribution; appellant received a check in the amount of $193,975.  Appellant

2

deposited this check in a Fifth Third Bank Account in appellant's name; these funds were later transferred to KeyBank.

{¶5} Appellant also called Western National Life Insurance Company identifying himself as James A. Haney, Sr. Again, utilizing his father's personal identifying information, appellant completed documentation to obtain a check in the amount of $80,027.73 from Western National Life Insurance from his father's account. Appellant also deposited this check in his Fifth Third Bank Account. Appellant then moved some of the monies to KeyBank. Appellant eventually withdrew $182,000 in cash from KeyBank. Appellant testified that with the money he obtained from his father's annuities, he bought a boat, gambled, gave some to his cousin to buy a Harley, distributed an amount to his girlfriend, then took the rest to North Carolina and buried it in a hole.

{¶6} At trial, appellant, during his testimony, acknowledged that he made the telephone calls, utilized his father's personal information, signed the forms as James Haney, Sr., and deposited the checks into appellant's personal account. Appellant maintained, however, that his father had given him permission prior to his death.

{¶7} Appellant was found guilty of all the aforementioned counts. At sentencing, the trial court merged Counts 2 and 4 (identity fraud and forgery) with Count 1 (identity fraud) and merged Count 3 (theft from an elderly person) with Count 6 (aggravated theft). Appellant was sentenced to a total term of 8 years imprisonment: four years on Count 1 (identity fraud), two years on Count 5 (telecommunications fraud), and two years on Count 6 (aggravated theft), to run consecutively.

3

{¶8} Appellant filed a notice of appeal and, as his first assignment of error, alleges:

{¶9} "Defendant-appellant was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution."

{¶10} In order to prevail on an ineffective assistance of counsel claim, appellant must demonstrate from the record that trial counsel's performance fell below an objective standard of reasonable representation, and there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus, adopting the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). If a claim can be disposed of by showing a lack of sufficient prejudice, there is no need to consider the first prong, i.e., whether trial counsel's performance was deficient. *Id.* at 142, citing *Strickland* at 695-696. There is a general presumption that trial counsel's conduct is within the broad range of professional assistance. *Id.* at 142-143.

{¶11} Furthermore, decisions on strategy and trial tactics are generally granted a wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze the trial counsel's legal tactics and maneuvers. *State v. Gau*, 11th Dist. No. 2005-A-0082, 2006-Ohio-6531, ¶35, citing *Strickland* at 689. Debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995).

{¶12} Under this assigned error, appellant presents this court with five issues for review. First, appellant claims his trial counsel was ineffective for failing to make a motion with the trial court to dismiss his case for violation of his right to a speedy trial.

4

{¶13} Here, the record indicates that appellant was incarcerated in North Carolina on October 2, 2011. The indictment in this case was filed on November 17, 2011, along with an arrest warrant on the indictment. Appellant arrived in Ohio on January 16, 2012.

{¶14} At the sentencing hearing, there was discussion regarding appellant's jail-time credit. The state indicated appellant was to receive 184 days credit for time served, which totaled the number of days from the time appellant was returned to Ohio, January 16, 2012, until the sentencing hearing of July 18, 2012. In its sentencing entry, however, the trial court granted appellant 290 days—the total number of days from when appellant was first incarcerated in North Carolina on October 2, 2011, until the sentencing hearing of July 18, 2012.

{¶15} Appellant argues that because the trial court granted him jail-time credit for the time served in North Carolina, his term of confinement in North Carolina should count toward his speedy trial calculation. Appellant maintains he is entitled to discharge because he was not brought to trial within the statutory time period. Conversely, the state maintains that appellant's speedy trial calculation did not begin until January 16, 2012—the date appellant arrived in Ohio. Therefore, the issue is whether the duration of appellant's confinement in North Carolina is to be counted toward appellant's speedy trial time.

{¶16} To support appellant's argument on appeal, he cites *State v. Koester*, 3d Dist. Nos. 16-03-07 and 16-03-08, 2003-Ohio-6098, ¶9. In *Koester*, the appellant was confined in Nebraska on unrelated charges during the time he was scheduled to appear

5

in Ohio on two separate cases. The trial court ordered that speedy trial time limits in both cases be tolled pursuant to R.C. 2945.72. R.C. 2945.72 provides, in part:

{¶17} The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:

{¶18} (A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reasons of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability * * *.

{¶19} The appellant in *Koester* argued that the state did not exercise reasonable diligence in its attempts to secure him for prosecution in Ohio. The Third Appellate District, after acknowledging that speedy trial time is extended when an accused is unavailable by reason of his incarceration in another state, focused its analysis on whether the prosecution met the "reasonable diligence" standard required by R.C. 2945.72(A) ("speedy trial time is tolled only for as long as the defendant is unavailable and the prosecution can show reasonable diligence was exercised to secure [the defendant's] availability"). *Id.* at ¶14. The court concluded that while the initial efforts of the prosecution constituted reasonable diligence, the prosecution did nothing for nearly 300 days after its motion to toll the speedy trial time limits in both cases. *Id.* at ¶17. At that time, the state proposed a plea agreement, which was rejected by the appellant. *Id.* at ¶18. Thereafter, the prosecution again did nothing to secure the appellant's

6

availability until he was returned to the jurisdiction of Ohio—a period of an additional 396 days from the time of the plea offer. *Id.* The court held that based on the facts of the case, the prosecution did not demonstrate "reasonable diligence" in securing the appellant's availability for disposition of the pending charges. *Id.* at ¶20. Additionally, the court noted that the burden is on the prosecution to document its efforts in obtaining the availability of the defendant for trial. "The state has the burden of bringing the defendant before the court on pending charges and the record should reflect the efforts made by the state to do so and, in cases in which the state is unable to do so, the reasons why such efforts were unsuccessful." *Id.* at ¶22.

**{¶20}** The state argues the instant case is analogous to *State v. Patrick*, 2d Dist. No. 15225, 1996 Ohio App. LEXIS 2516 (June 14, 1996). In *Patrick,* the appellant was indicted in Ohio on March 7, 1994, but was then incarcerated in New Jersey, serving the remainder of a term after revocation of his prior parole. *Id.* at *2. While the appellant was confined in New Jersey, a warrant on the Ohio indictment was served on New Jersey authorities. *Id.* The appellant was discharged with regard to the New Jersey charge on July 29, 1994; appellant remained confined on the Ohio warrant, waived extradition, and was returned to Ohio and arrested on the indictment on August 11, 1994. *Id.* The appellant's jury trial was scheduled for November 2, 1994. *Id.* In denying the appellant's motion to dismiss for denial of his right to a speedy trial, the trial court held that his speedy trial time did not commence until August 11, 1994, when the appellant was returned to Ohio.

**{¶21}** The appellate court affirmed, stating:

{¶22} R.C. 2945.72(A) applies to extend the Defendant's speedy trial time in this instance. The extension provision in the statute also applies to any period 'during which the accused is unavailable for hearing or trial * * * by reason of his confinement in another state.' Patrick was confined in New Jersey after July 29 and until August 11, 1994, albeit on an Ohio warrant. While the cause of his confinement was instituted by Ohio, the decision to confine him was made by New Jersey in the exercise of its police powers. Therefore, Patrick's speedy trial time was extended to August 11, 1994, when he was released to Ohio and was arrested here. Patrick has not demonstrated that his confinement by New Jersey after July 29 was unreasonably extended by any failure of due diligence on the part of the Ohio prosecutor to bring him back. *Id.* at *5-*6.

{¶23} This court has spoken on the effect of R.C. 2945.72(A) in extradition cases. In *State v. Olcese,* we stated:

{¶24} [W]here a defendant is incarcerated in another state and waives extradition, the speedy trial clock is tolled as the 'accused is unavailable for hearing or trial[.]' *See State v. Adkins*, 4 Ohio App.3d 231, 232 (1982) (holding where a defendant is arrested in another state, waives extradition, and is transported to Ohio, the speedy trial requirements of R.C. 2945.71, et seq., toll until the

8

defendant is in Ohio and arrested under an Ohio charge). 11th Dist. No. 2008-P-0094, 2009-Ohio-5057, ¶115.

{¶25} We recognized that this tolling provision is not absolute, but is triggered "only if the prosecution exercises reasonable diligence in securing the defendant's availability." *Id.* at ¶116.

{¶26} Based on the record before us, we are unable to review appellant's claim that his trial counsel was ineffective for failing to file a motion to dismiss based on the denial of his right to a speedy trial. We note that at the conclusion of the sentencing hearing, appellant inquired as to why he was not brought to trial within 90 days, as he was returned to Ohio from North Carolina on January 16, 2012. The trial court informed appellant that he may seek advice from his new legal counsel during the appellate process. The record before us, however, does not indicate whether appellant waived extradition nor does it contain any evidence demonstrating what, if any, efforts the prosecution made in securing appellant's availability. Appellant's claim would be more properly presented in a postconviction relief proceeding where testimony regarding counsel's strategy and the relative merits of the motion, or lack thereof, could be properly presented.

{¶27} In addition, the fact that the trial court gave credit for the time spent in jail in North Carolina has no bearing on the speedy trial analysis. Whether credit should be given for time served is governed by other factors, including the statutory requirements of R.C. 2967.191. Whether the time should be included in the speedy trial calculation includes entirely different considerations, including those set forth in R.C. 2945.72 as discussed herein.

9

{¶28} Appellant next claims his trial counsel was ineffective for (2) proceeding to trial without preparing a defense, (3) failing to sufficiently cross-examine the state's witnesses, and (4) failing to inquire into the evidence potentially missed by two sleeping jurors. The record does not support appellant's arguments.

{¶29} At trial, appellant and trial counsel had discussions regarding trial strategy; appellant, after being advised by the trial court and his counsel, chose to testify in his own behalf and present his proposed defense of consent, against the advice of his counsel. Appellant's counsel informed the trial court that he did not plan to proceed on the consent defense, as proposed by appellant himself, and "the only way that we're going to be able to get that message conveyed to the jury is if [appellant] want[s] to testify." Appellant, against the advice of counsel, chose to testify and present his defense of consent, which was ultimately unsuccessful.

{¶30} Next, appellant maintains that his trial counsel failed to sufficiently cross-examine the state's witnesses. Appellant focuses his argument on the number of questions asked of each witness. The record does not support appellant's ineffective assistance of counsel claim as to the cross-examination of the witnesses. Generally, "[t]he scope of cross-examination falls within the ambit of trial strategy" and, as a result, will not serve as a basis for an ineffective assistance claim. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶101.

{¶31} Appellant next alleges that his trial counsel failed to inquire into the evidence potentially missed by two sleeping jurors. After the jury began to deliberate, appellant informed the trial court that "one of the girls that I know that was in this courtroom and watched two of the trial people from the jury dozing off or sleeping while

10

important facts were issued." The trial court then explored appellant's contention noting that it did not observe any of the jurors sleeping. Additionally, appellant has not cited to what portion of the testimony, if any, was missed by the jurors.

{¶32} Lastly, appellant maintains trial counsel was ineffective for agreeing to an erroneous merger analysis. Appellant maintains that all of his counts should have merged into a single count, as they were all part of the same scheme.

{¶33} At sentencing, the trial court merged Counts 2 and 4 (identity fraud and forgery) with Count 1 (identity fraud) and merged Count 3 (theft from an elderly person) with Count 6 (aggravated theft). Consequently, appellant was sentenced on Count 1 (identity fraud), Count 5 (telecommunications fraud), and Count 6 (aggravated theft).

{¶34} The test to determine whether two offenses should be merged pursuant to the constitutional protections codified in R.C. 2941.25 has evolved considerably from its initial, oft-criticized statutory abstraction methodology—a paradigm subsequently acknowledged as capable of producing absurd results. *See State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶16-20 (detailing the history of the merger analysis).

{¶35} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, the Ohio Supreme Court developed the current standard, holding that, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id.* at syllabus. In making such a determination, a court must consider whether it is possible to commit the offenses by the same conduct and, if so, whether the offenses were, in fact, committed by the same conduct: i.e., "'a single act committed with a single state of mind.'" *Id.* at ¶49. If both questions are answered affirmatively, then merger is appropriate. The

11

results of the analysis will vary by case as the examination of the defendant's conduct is necessarily non-formulaic and inherently subjective. *Id.* at ¶52.

{¶36} Nothing in the record supports appellant's assertion that he committed a single act with a single state of mind. Rather, the evidence presented at trial contains sufficient facts to demonstrate that appellant committed the three offenses through separate and distinct conduct. Appellant made numerous telephone calls to both Lincoln Financial Group and Western National Life Insurance Company and utilized his father's personal information with the purpose to obtain disbursements from his father's annuities. Then, upon receiving the paperwork from both Lincoln Financial Group and Western National Life Insurance Company, appellant signed his father's name to cause the monies to be dispersed. Appellant then, after moving the funds between two banks, withdrew and subsequently spent a large portion of the funds from the annuities.

{¶37} Appellant's first assignment of error is without merit.

{¶38} In his second assignment of error, appellant states:

{¶39} "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

{¶40} To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In weighing the evidence submitted at a criminal trial, an appellate court must defer to the factual findings of the trier of fact regarding the weight

12

to be given the evidence and credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶41} Appellant maintains that his convictions are against the manifest weight of the evidence because appellant testified that his father intended for him to have the inheritance, and further, his father's will was changed to disinherit appellant during the time his father lived with appellant's sister, Cindy Creegan. Appellant alleges the evidence at trial demonstrated that he was entitled to "his inheritance or, at worst, his father was manipulated while not in his right mind into disinheriting [him]."

{¶42} The jury heard appellant's testimony that he utilized his father's personal information to obtain and cash checks from his deceased father's annuities. Appellant did not dispute this conduct; instead, he maintained that he had permission to engage in such conduct. The defense only presented appellant's self-serving testimony to buttress this assertion. At trial, the jury also heard testimony from the 12 witnesses presented by the state.

{¶43} The trier of fact is free to believe or disbelieve all or any of the testimony. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. Consequently, although an appellate court must act as a 'thirteenth juror' when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. *State v. Sevilla*, 10th Dist. No. 06AP-954, 2007-Ohio-2789, ¶13.

13

**{¶44}** Therefore, after reviewing the record and weighing the evidence and all reasonable inferences, we cannot conclude the jury lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. Appellant's second assignment of error is not well founded.

**{¶45}** As his third assignment of error, appellant alleges:

**{¶46}** "The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A)."

**{¶47}** Appellant claimed the evidence was insufficient to support a conviction. The test for determining the issue of sufficiency is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). Thus, the claim of insufficient evidence invokes a question of due process, the resolution of which does not allow for a weighing of the evidence. *State v. Lee*, 11th Dist. No. 2010-L-084, 2011-Ohio-4697, ¶9. Crim.R. 29(A) requires the trial court to grant a motion for acquittal if the evidence is insufficient to sustain a conviction on the charged offenses.

**{¶48}** Under this assigned error, appellant merely asserts "the evidence presented was insufficient to prove that he lacked consent to claim his portion of the inheritance." Appellant defines his sufficiency argument strictly in terms that there was inadequate evidence but, in doing so, fails to support or put forth a substantive argument in support of this conclusion. App.R. 16(A)(7). We therefore conclude that,

14

given the record and testimony at the trial court, there was sufficient evidence to support appellant's convictions.

**{¶49}** Appellant's third assignment of error is without merit.

**{¶50}** Appellant's fourth assignment of error states:

**{¶51}** "The trial court erred by sentencing the defendant-appellant to a term of imprisonment where its findings were not supported by the record."

**{¶52}** After the Ohio Supreme Court's decision in *State v. Foster*, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraph seven of the syllabus.

**{¶53}** The Ohio Supreme Court, in a plurality opinion, has held that felony sentences are to be reviewed under a two-step process. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶26. The Court held:

**{¶54}** First, [appellate courts] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard. *Id*.

**{¶55}** The *Kalish* Court affirmed the sentence of the trial court as not being contrary to law, since the trial court expressly stated that it had considered the R.C.

15

2929.11 and R.C. 2929.12 factors, post-release control was applied properly, and the sentence was within the statutory range. *Id.* at ¶18.

**{¶56}** An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, at ¶62, quoting *Black's Law Dictionary* 11 (8 Ed.Rev.2004).

**{¶57}** On appeal, appellant does not argue his sentence is contrary to law; instead, he maintains the trial court failed to conduct an analysis of the factors in R.C. 2929.12(C). R.C. 2929.12(C) provides several factors that suggest an "offender's conduct is less serious" than conduct generally associated with the offense. Specifically, appellant argues the trial court failed to consider that he did not intend physical harm; he acted under a strong provocation; and he expressed genuine remorse.

**{¶58}** It is well established that when considering R.C. 2929.11 and R.C. 2929.12, a trial court "is not required to make findings of fact under the seriousness and recidivism factors in R.C. 2929.12." *State v. ONeil*, 11th Dist. No. 2010-P-0041, 2011-Ohio-2202, ¶34.

**{¶59}** We initially note that the trial court, in its judgment entry of sentence, explicitly stated it had considered and balanced the seriousness and recidivism factors under R.C. 2929.12 when determining appellant's sentence. As the sentence is within the relevant felony range and there is nothing to otherwise indicate the trial court acted unreasonably in imposing sentence, the sentence is legally sufficient under *Kalish*, *supra*.

**{¶60}** Appellant's fourth assignment of error is without merit.

{¶61} Based on the opinion of this court, the judgment of the Lake County Court of Common Pleas is hereby affirmed.


DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.