[Cite as *State v. Vanover*, 2021-Ohio-3172.]

# IN THE COURT OF APPEALS OF OHIO
# ELEVENTH APPELLATE DISTRICT
# GEAUGA COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- v -

JOANNE SALVI VANOVER,

        Defendant-Appellant.

CASE NO. 2020-G-0268

Criminal Appeal from the
Chardon Municipal Court

Trial Court No. 2020 CRB 00090

# **O P I N I O N**

Decided: September 13, 2021
Judgment: Affirmed

*Benjamin G. Chojnacki,* City of Chardon Law Director, 1301 East Ninth Street, Suite 3500, Cleveland, OH 44114, and *Steven E. Patton*, Assistant Police Prosecutor, Chardon Municipal Court, 111 Water Street, Chardon, OH 44024 (For Plaintiff-Appellee).

*Jay F. Crook,* Jay F. Crook, Attorney at Law, LLC, 30601 Euclid Avenue, Wickliffe, OH 44092 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Joanne Salvi Vanover, appeals her convictions for Domestic Violence and Disorderly Conduct. For the following reasons, we affirm the decision of the court below.

{¶2} On February 10, 2020, Complaints were filed in the Chardon Municipal Court charging Joanne with Domestic Violence, a first-degree misdemeanor in violation of R.C. 2919.25(A), and Disorderly Conduct, a minor misdemeanor in violation of R.C.

2917.11(A)(1).

{¶3} On July 2, 2020, a bench trial was held.

{¶4} Michael Vanover testified for the prosecution that, on February 9, 2020, he was married to and residing with Joanne at 15215 Overture Drive in Newbury, Ohio. At about noon, Michael and Joanne began to argue and Joanne told him to leave. For the next hour and a half Michael packed and did laundry.

{¶5} At some point, Michael was in the kitchen putting on his shoes with his cell phone on the table. Joanne "rushed" into him, knocked chairs over, and tried to grab the phone. Michael tried leaving the residence but was blocked by Joanne. Michael called 911 while Joanne continued to demand the phone. Holding the phone out of her reach, Michael moved toward a door leading to the garage. He testified: "At this point, she pushes me up against the door * * *. She then grabbed and raked her nails on my arm. She also grabbed my arm and bit it. I yanked my arm out of her mouth, and also, while she had me pinned up, she was punching me in the ribs."

{¶6} Michael then left the residence and waited for a sheriff's deputy to arrive.

{¶7} Michael described himself as 5'10" and weighing about 240 pounds and Joanne as 5'2".

{¶8} Pictures of Michael's arms were admitted into evidence showing red marks which Michael claimed were scratches, and of Joanne's thigh showing a bruise. Michael denied doing anything to Joanne that would have caused bruising.

{¶9} Deputy Evan Reinhart of the Geauga County Sheriff's Department was called as a witness for both the prosecution and the defense. He testified that he investigated the February 9 incident at the Vanover residence. Deputy Reinhart spoke

2

with the Vanovers and took the pictures of Michael's arms. Joanne told Deputy Reinhart that they had been having an argument about bills, that she wanted the cell phone and she wanted him to leave. He asked Joanne about the scratches on Michael's arm and "she said he would have been scratched while she was trying to get the phone out of his * * * pocket." Joanne also told Deputy Reinhart that Michael had pushed her during the incident.

{¶10} Joanne testified on her own behalf. On the morning of February 9, 2020, she was doing laundry while Michael stayed in bed. They began to argue because Michael was not paying his share of the bills and she told him to leave the house which she owned. While she was gathering his clothes from the laundry room, Michael shoved her, causing her to fall and bruise her leg.

{¶11} Joanne then followed Michael to the kitchen and tried to take the cell phone from him since the phone had been purchased in her name. Michael held the phone away from her and she was not able to grab it.

{¶12} Joanne next called her sister and told her to come to the house because Michael was "out of control" and was "going to kill [her] with those damn guns of his." She also called 911 and advised that Michael had guns in the house.

{¶13} At the conclusion of trial, the municipal court found Joanne guilty of Domestic Violence and Disorderly Conduct.

{¶14} On September 25, 2020, the municipal court issued a Sentencing Judgment Entry, ordering Joanne to pay a fine of $250 plus costs, to serve a 180-day jail sentence with 150 days suspended and 75 days of electronically monitored house arrest and to be placed on two years of probation for Domestic Violence, and a fine of $0 for Disorderly

3

Conduct.

{¶15}  On October 9, 2020, Joanne filed a Notice of Appeal.  On appeal, she raises the following assignments of error:

{¶16}  "[1.] The trial court committed reversible error by applying the wrong standard in finding defendant-appellant guilty of domestic violence without finding that she knowingly caused or attempted to cause physical harm."

{¶17}  "[2.] The finding of guilt on the counts of domestic violence and disorderly conduct was against the manifest weight of the evidence."

{¶18}  Joanne was convicted of Domestic Violence and Disorderly Conduct.  The elements of Domestic Violence are: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."  R.C. 2919.25(A).  The elements of Disorderly Conduct are: "No person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior."  R.C. 2917.11(A)(1).

{¶19}  In the first assignment of error, Joanne argues the municipal court applied the wrong legal standard in finding her guilty of Domestic Violence: "There is nothing in the [court's] recitation where Ms. Vanover is found guilty of domestic violence that indicates that the trial court found that she knowingly caused or attempted to cause physical harm."  Appellant's brief at 7.  In the recitation in question, the court stated: "Credibility certainly is at issue here.  The Court finds that [in] the photos in State's Exhibits 2 through 4 * * * there are red marks [on Michael's arms].  Regardless of what or how they got there, the testimony was that again, by her own admission, either that she, that she might have scratched him when she grabbed for the phone, and it's consistent with

4

Mr. Vanover's testimony."

{¶20} "A reviewing court must presume that the trial court applied the law correctly." *State v. Coombs*, 18 Ohio St.3d 123, 125, 480 N.E.2d 414 (1985). "This presumption is violated when the record clearly demonstrates that the trial court did not understand the law." *Ashtabula v. Smith*, 11th Dist. Ashtabula No. 2000-A-0029, 2001 WL 530466, *2. In the context of a bench trial, a reviewing court will "presume the [lower] court employed the correct standard of law, unless the record clearly demonstrates otherwise." *State v. Amerson*, 8th Dist. Cuyahoga No. 78235, 2001 WL 755902, *4.

{¶21} Superficially, the municipal court's statement "regardless of what or how [the red marks] got there" could indicate an indifference to the element of the crime that Joanne knowingly caused the red marks. Such an interpretation of the court's remarks, however, is unwarranted.

{¶22} First of all, the municipal court, in pronouncing the finding of guilt, correctly stated the elements of the offense: "No person shall knowingly cause or attempt to cause physical harm to a family or household member. The Court finds Miss Vanover guilty of Domestic Violence." It would take a more unequivocal statement than the one cited by Joanne for this court to conclude that the municipal court convicted her without regard to whether she was the actual cause of Michael's injuries.

{¶23} Secondly, the municipal court made this statement in the context of discussing the credibility of the witnesses. The court's intention appeared to be that the red marks, the physical injury element of the offense, were confirmed by both Michael's and Joanne's testimony. The court referred to Joanne's statement to Deputy Reinhart that Michael "would have been scratched while she was trying to get the phone out of his

5

* * * pocket." Joanne testified that she "was trying to take the phone" but "[didn't] know if [she] scratched him." If the only evidence on this issue was Joanne's testimony, it would be arguable whether the knowingly element of the offense had been satisfied. Significantly, however, the court did not credit Joanne's testimony. Rather, it found that "Miss Vanover was not credible." As discussed below, Michael's testimony did support a finding that Joanne knowingly caused the injury and it is on his testimony that the findings of guilt may be supported.

{¶24} Contrary to Joanne's position, the record before this court does not clearly demonstrate that the municipal court applied the wrong legal standard in finding her guilty of Domestic Violence.

{¶25} Under this assignment of error, Joanne urges this court to apply *State v. Hancock*, 1st Dist. Hamilton No. C-030459, 2004-Ohio-1492, for the proposition "that if there was any physical contact made [in the present case], it was not intentional or knowingly, and that it was caused by the actions of Mr. Vanover in wrestling over the phone." Reply brief at 3. We find the facts of *Hancock* to be distinguishable and without application herein. In *Hancock*, unlike the present case, both the putative victim and the defendant testified that "they had been struggling over the telephone when the telephone struck [the putative victim]." *Id.* at ¶ 45. Neither party claimed that the defendant did anything specific to cause the phone to strike the putative victim (contrary to her original statement to police). Accordingly, there was no "substantive evidence" that the defendant had knowingly caused the injuries. *Id.* at ¶ 47.

{¶26} In the present case, Michael testified that she "raked her nails on [his] arm," "grabbed [his] arm and bit it." This satisfies the element of the offense that Joanne acted

6

knowingly.

{¶27} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). This standard of culpability or mens rea "does not require the defendant to have a specific intent to cause a certain result." *State v. Stover*, 8th Dist. Cuyahoga No. 104388, 2017-Ohio-291, ¶ 14 (cases cited); *State v. Virden*, 7th Dist. Belmont No. 04 BE 39, 2005-Ohio-6446, ¶ 22 ("a defendant's motive and intent during an incident giving rise to a charge of domestic violence are irrelevant to a determination as to whether the defendant acted with knowledge"); *State v. Younker*, 2d Dist. Darke No. 02CA1581, 2002-Ohio-5376, ¶ 23 ("[t]he fact that Defendant lacked a specific intent to cause physical harm is of no consequence, because R.C. 2919.25(A) only requires that the offender act 'knowingly'").

{¶28} Accordingly, this court found that there was sufficient evidence to support a charge of Domestic Violence where the victim testified that the defendant "injured her eye by intentionally pushing her hand, resulting in her mascara wand entering her eye" and "injured her knee by pulling her down the stairs." *Chardon v. Bulman*, 11th Dist. Geauga No. 2007-G-2811, 2008-Ohio-6769, ¶ 87. The court in *Stover* found sufficient evidence existed where the defendant pushed his mother to the ground while trying to get to the bathroom. *Stover* at ¶ 14. In *Middleburg Heights v. Musa*, 8th Dist. Cuyahoga No. 97914, 2013-Ohio-366, the court held that "it is reasonable to infer that [the defendant] was aware that by struggling with his wife to get the car keys and dragging her from their son's room to the outside of the house, he would probably be causing her some injury, even if only a slight and fleeting injury." *Id.* at ¶ 17. *See also State v. Celli*, 9th Dist. Summit No. 28226,

7

2017-Ohio-2746, ¶ 24 (injury sustained during a struggle over personal belongings).

{¶29} The first assignment of error is without merit.

{¶30} In the second assignment of error, Vanover challenges her convictions as being against the manifest weight of the evidence.

{¶31} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶32} When considering whether a judgment is against the weight of the evidence, "a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. The court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the weight of the evidence necessarily must include a finding of sufficiency.'" (Citation omitted.) *State v. Howard*, 11th Dist. Lake No. 2019-L-153, 2020-Ohio-5057, ¶ 47.

{¶33} "When a court of appeals reverses a judgment of a trial court on the basis

8

that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of conflicting testimony." (Citation omitted.) *Thompkins* at 387. Nevertheless, "[t]he trier of fact is free to believe or disbelieve all or any of the testimony" and "is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible." *State v. Haney*, 11th Dist. Lake No. 2012-L-098, 2013-Ohio-2823, ¶ 43. "Consequently, although an appellate court must act as a 'thirteenth juror' when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility." (Citation omitted.) *Id.*

{¶34} Joanne's argument on appeal is that her testimony was more credible than Michael's testimony. Joanne makes the following specific claims regarding Michael's testimony:

> 1. Mr. Vanover testified that Mrs. Vanover repeatedly and consistently prevented him from leaving, but at different times reported that he could not reach an exit despite having his back against one, having Mrs. Vanover blocking one but not the other, and not being willing to leave without his shoes (which he alternatively reported being in the kitchen and in the garage).
>
> 2. Mr. Vanover's description of being pinned and repeatedly punched was inconsistent with his version of events on the date in question, as verified by the responding Deputy.
>
> 3. Mr. Vanover's claim that his arm was physically restrained by a woman almost a foot shorter than him and held in place while she dragged her nails from his wrist to his elbow defies credibility by itself. Furthermore, the photographs of the sole abrasion on his arm shows the abrasion being made in a left to right manner, not up and down, and did not show anything resembling individual nail marks.
>
> 4. Mr. Vanover admitted to using both hyperbole and exaggeration

9

during his testimony when it came to describing Mrs. Vanover's demeanor on the date in question as well as his substantial (15-20) history of physical altercations.

5.   Mr. Vanover admitted that he was not prepared to leave when Mrs. Vanover threw him out, and further admitted to having been engaged in an apartment search for months prior.

Appellant's brief at 11-12.

{¶35} The points raised by Joanne could support the conclusion that Michael's testimony was lacking in credibility but do not compel that conclusion. Many of these points concern testimony on matters of little significance to Joanne's guilt or innocence. In other respects, they are not inconsistent with other testimony in the record. Both Joanne and Michael testified that she wanted him out of the house, she wanted the cell phone, and they struggled over the phone. Although Joanne denied preventing Michael from leaving the home, the struggle over the phone could have had that effect if she continued reaching for the phone while he tried to move past her. Without more precise testimony regarding the layout of the residence, it is not possible to say that Michael's description of the incident was inherently improbable.

{¶36} Michael's description of the altercation with Joanne at trial was not inconsistent with the description given on the day of the incident. Deputy Reinhart testified that Michael's trial testimony "was probably a little more in depth," but he could not recall many of the details that either Michael or Joanne related on the date in question.

{¶37} The photographs of Michael's arms unquestionably show abrasions on the forearms but there is no conclusive testimony as to how they were caused. Michael described them as scratch marks but not a bite mark. Deputy Reinhart believed the injury resembled a bite mark. Joanne speculated that they might have been caused during the

10

struggle over the phone, but did not know what caused the marks. The fact that the marks cut across the width of the arms rather than their length in the photographs does not undermine Michael's testimony that Joanne caused them in order to make him surrender the phone.

{¶38} The fact that Michael used hyperbole and exaggeration with regard to certain aspects of his testimony on collateral matters has little bearing on his credibility, especially inasmuch as he freely admitted to using hyperbole and exaggeration.

{¶39} As a result of the altercation and Joanne's arrest, Michael was able to remain in the residence for twelve days when he had not yet secured another place to live. Certainly, this could have been a motive for Michael to fabricate charges. Such a motive may be legitimately doubted, however, since he did not provoke the incident. Both parties testified that the altercation began when Joanne ordered Michael to leave the residence and demanded the return of the cell phone.

{¶40} Joanne also argues under this assignment of error that the municipal court's stated reasons for crediting Michael's testimony over Joanne's were unsupported by the evidence. In assessing the parties' relative credibility, the court stated:

> I find again that on direct examination, Miss Vanover said she fell straight back, hit the door jam. On cross, she said she hit a shoe rack. The bruise appearing on Defendant's Exhibit looked to be a side bruise that if she fell back on the door jam, I don't know how that would result in that bruise. Again, never mentioned the shoe rack on direct examination, only on cross. By her own admission, she might have scratched Mr. Vanover when attempting to grab the phone. * * *
>
> She was inconsistent when she told the deputy, or when * * * on direct she testified that she told the deputies about the guns. But yet on cross * * *, her response was that she had mentioned in her 911 call that there were guns. * * *

11

What the Court finds really problematic is that she started crying while testifying about this fight or some things that she alleges Mr. Vanover said. She alleges she got pushed. She states there are guns in the house, but yet, she doesn't call 911 at that point. She calls her sister first. And Mr. Vanover, by his own, or in his testimony stated, quote, he was truly scared. Again, the credibility issue finds [sic] that Miss Vanover was not credible.

{¶41} Joanne correctly notes that the municipal court was wrong about her testimony as to the cause of her bruise and advising the deputies about the presence of guns. Joanne did state in her direct testimony that, when Michael pushed her, she fell against the door jam and then on the shoe rack when she went to the floor. Joanne also testified on direct that it was the shoe rack that caused the bruise. Furthermore, Joanne never testified that she advised the deputies on the scene about the presence of guns. The court's mischaracterization of Joanne's testimony on these points does not invalidate its finding of guilt. Joanne's testimony regarding the bruise and the guns was only part of the court's analysis of her credibility. When reviewing whether a conviction is against the weight of the evidence, the reviewing court must review all the evidence in the record and, sitting as a thirteenth juror, is not bound by the trial court's assessment of that evidence.

{¶42} More important in the municipal court's estimation was that, while claiming that Michael pushed her and that she was concerned about guns being in the house, she contacted her sister before law enforcement. This is similar to the argument made by Joanne that Michael was not credible because his trial testimony was more detailed than the statement given to Deputy Reinhart at the scene. Joanne did not mention guns to the deputies at the scene or in her written statement. While she mentioned the guns to the 911 dispatcher, she testified it was because she was asked whether there were guns in

12

the home. At trial, however, Joanne claimed that she was scared of Michael killing her with those guns. While there is no inconsistency in her statements, the trier of fact could determine that there was an inconsistency in her professed fear of the guns and her behavior at the time of the incident.

{¶43} The municipal court emphasized as "really problematic" the fact the Joanne began crying while testifying about certain intimate details of her relationship with Michael that had no direct bearing on the charges against her. While the court did not elaborate on what it found problematic about Joanne's testimony at this point, its comment underscores why a reviewing court is normally deferential to a lower court's judgment regarding the credibility of witnesses although it may disagree with that judgment. "Because the trier of fact sees and hears the witnesses and is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." (Citations omitted.) *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20. While the court's finding of inconsistencies in Joanne's testimony carries no weight, the court's consideration of her manner and demeanor is entitled to deference. *State v. Conklin*, 11th Dist. Geauga No. 2020-G-0242, 2021-Ohio-417, ¶ 64 ("[t]he choice between the credibility of witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact") (citation omitted); *State v. Lavean*, 11th Dist. Lake No. 2020-L-045, 2021-Ohio-1456, ¶ 37 ("[t]he trier of fact * * * is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility") (citation omitted).

13

{¶44} Here, we are unable to gauge what effect seeing and hearing the witnesses, Joanne in particular, had on the municipal court's estimation of their credibility. In the present case, that determination was critical to the ultimate issues in the case. Joanne and Michael presented conflicting testimony on what occurred during the incident, neither party materially contradicted herself or himself in their testimony, and there was little other evidence to either corroborate or impeach their testimony. In these circumstances, which are not at all unusual or peculiar, we find no cause to overturn the verdicts rendered. Despite the municipal court's misstatements regarding Joanne's testimony, we cannot say that the court lost its way and created such a manifest miscarriage of justice that her convictions must be reversed and a new trial ordered.

{¶45} The second assignment of error is without merit.

{¶46} For the foregoing reasons, the judgment of the Chardon Municipal Court finding Joanne guilty of Domestic Violence and Disorderly Conduct is affirmed. Costs to be taxed against the appellant.


MARY JANE TRAPP, P.J.,

THOMAS R. WRIGHT, J.,

concur.

Case No. 2020-G-0268