[Cite as *State v. Bennett*, 2022-Ohio-4471.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,
CITY OF WICKLIFFE,

        Plaintiff-Appellee,

- vs -

TANESHE MONIQUE BENNETT,

        Defendant-Appellant.

CASE NO. 2022-L-007

Criminal Appeal from the
Willoughby Municipal Court

Trial Court No. 2021 CRB 01803

## **O P I N I O N**

Decided: December 12, 2022
Judgment: Affirmed

*Scott J. Zele*, City of Wickliffe Prosecutor, 38106 Third Street, Willoughby, OH 44094 (For Plaintiff-Appellee).

*Cory R. Hinton*, Hanahan & Hinton, LLC, 8570 Mentor Avenue, Mentor, OH 44060 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1}    Defendant-appellant, Taneshe Monique Bennett, appeals her conviction for Criminal Trespass following a jury trial in the Willoughby Municipal Court of Lake County. For the following reasons, Bennett's conviction is affirmed.

{¶2}    On July 26, 2022, a Complaint was issued charging Bennett with Criminal Trespass, a misdemeanor of the fourth degree in violation of R.C. 2911.21(A)(4), and Resisting Arrest, a misdemeanor of the second degree in violation of R.C. 2921.33(A).

{¶3} On November 29-30, 2021, a jury trial was held at which the following relevant testimony was given:

{¶4} Babar Bhatti testified that, in the early morning hours of July 25, 2021, he was working at the front desk of the Quality Inn on Euclid Avenue in Wickliffe, Ohio. A woman came in and rented the only remaining room in the hotel for $75 in cash. She returned to the desk a few minutes later complaining that the room lock was not working. Since there were no other rooms available, Bhatti refunded the money. However, the woman wanted to return to the room to go to bed. Bhatti asked her not to do that. The woman said she did not care. Bhatti told her that he would call the police, but she ignored him and returned to the room.

{¶5} Patrolman Daniel Rosen of the Wickliffe Police Department testified that at approximately 1:57 a.m. on July 25, 2021, he received a dispatch regarding an "unwanted guest" at the Quality Inn. He spoke with Bhatti at the scene and was provided a copy of the guest's identification identifying her as Taneshe Bennett. Rosen, accompanied by another officer, Patrolman Budzicki, was directed to room 241. He found Bennett in the room and advised her that she could not stay because "the hotel deemed that the room was not fit to be rented." She responded by "repeatedly telling us that she had a receipt for the room and she had paperwork and that she was not leaving." Rosen explained that her money had been refunded, the room was not fit to be rented, there were no other rooms available, and she would have to leave. Bennett refused.

{¶6} Patrolman Rosen summoned another officer, Patrolman Sabrino. Bennett made the comment that "she had a gun to protect herself." At this point Bennett was placed in handcuffs. Rosen searched her bags for a gun but did not find one. Bennett

2

said she was joking about the gun. She was being uncooperative and refused to stay seated as ordered. The officers decided to place her under arrest for Criminal Trespassing, "since it was clear that she was not going to leave the room voluntarily."

{¶7} Patrolman Ryan Budzicki of the Wickliffe Police Department testified that he responded to the dispatch to the Quality Inn on the night in question. He affirmed that Bennett was uncooperative and refused to leave the room. She refused to remain seated while her bags were being searched. And, when they tried to remove her, she went slack so that he and Patrolman Sabrino had to carry her out of the hotel. Video of the incident from Budzicki's body camera was played for the jury.

{¶8} Bennett testified on her own behalf. Bennett claimed she was in the area to visit family in Euclid. Before renting the room at the Quality Inn, Bhatti explained that there was only one room available and that the lock was not working properly. To reassure her, Bhatti showed her that the door could be latched from the inside and that there was a security camera outside the room. They returned to the desk, and she gave him $75 as a deposit. Bhatti returned the money and wrote "no deposit" on the receipt. After that, she went back to the room and remained there until the police came and knocked on the door. At no point, Bennett testified, did Bhatti or anyone else from the hotel ask her to leave or tell her that she could not stay. She told the police she had a gun to convince them that she could protect herself despite the broken room lock. Once the officers put her in handcuffs, they tried to forcibly make her sit in a chair and then dragged her from the room without giving her an opportunity to walk on her own.

{¶9} Bennett was not sure why Bhatti returned the $75. She also admitted that when a room is paid for in cash, an additional $100 deposit is required and that she never

3

paid this deposit. It was her understanding that she would be given another room the next morning.

{¶10} At the conclusion of the trial, the jury found Bennett guilty of Criminal Trespass and Resisting Arrest.

{¶11} On January 5, 2022, Bennett was sentenced as follows: For Resisting Arrest, she was fined $500 and ordered to serve 90 days in the Lake County Jail with 30 days suspended. For Criminal Trespass, she was fined $150 and ordered to serve 30 days in the Lake County Jail with 15 days suspended. The jail terms were ordered to be served concurrently and she was given credit for 38 days served. The sentence was memorialized on January 12.

{¶12} On February 8, 2022, Bennett filed a Notice of Appeal. On appeal, she raises the following assignment of error: "The jury's finding of guilt and the Defendant-Appellant's subsequent conviction for Count Two, Criminal Trespass, is contrary to the manifest weight of the evidence; therefore, Defendant's conviction for said count should be overturned, and Defendant should be remanded to the trial court for a new trial."

{¶13} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

4

{¶14} When considering whether a judgment is against the weight of the evidence, "a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. The court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the weight of the evidence necessarily must include a finding of sufficiency.'" (Citation omitted.) *State v. Vanover*, 11th Dist. Geauga No. 2020-G-0268, 2021-Ohio-3172, ¶ 32.

{¶15} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony." (Citation omitted.) *Thompkins* at 387. Nevertheless, "[t]he trier of fact is free to believe or disbelieve all or any of the testimony" and "is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible." *State v. Haney*, 11th Dist. Lake No. 2012-L-098, 2013-Ohio-2823, ¶ 43. "Consequently, although an appellate court must act as a 'thirteenth juror' when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility." (Citation omitted.) *Id.*

5

{¶16}   In order to find Bennett guilty of Criminal Trespass, the State was required to prove that she, "without privilege to do so," and "[b]eing on the land or premises of another, negligently fail[ed] or refuse[d] to leave upon * * * being notified to do so by the owner or occupant, or the agent or servant of either."  R.C. 2911.21(A)(4).

{¶17}   On appeal, Bennett argues: "[T]he State did not present proper evidence that [she] trespassed * * * [t]he reason being that Bennett had a 'privilege' to be at the hotel and therefore could not have trespassed.  * * *  Specifically, Bennett had a privilege to reside in the room, as [she] paid for it and was initially told she could stay.  The refund and subsequent request for her to leave based on a broken lock were not sufficient to rebut said privilege."  Brief of Appellant at 6.

{¶18}   "'Privilege' means an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity."  R.C. 2901.01(A)(12).  "The law in Ohio * * * provides that a business invitee's privilege to remain on the premises of another may be revoked upon the reasonable notification to leave by the owner or his agents."  *Marcus v. Revco Discount Drug Ctrs. Inc.*, 8th Dist. Cuyahoga No. 66090, 1994 WL 449672, *2.

{¶19}   Accepting the testimony of the State's witnesses, Bennett was reasonably notified that she was no longer allowed to remain on the premises by Bhatti at the time he refunded her money.  Accepting Bennett's testimony, she was reasonably notified that she was no longer allowed to remain on the premises by the police officers when they confronted her in room 241.  *Massillon v. Smart*, 5th Dist. Stark No. 2001CA00328, 2002-Ohio-3603, ¶ 21 ("when the officers asked appellant to leave the store, they were doing

6

Case No. 2022-L-007

so at the request of [the store manager]" and so "it was within their authority * * * to request that she leave the premises").

{¶20} With respect to the sufficiency of Bhatti's reasons for revoking her privilege to remain on the premises, "Ohio law requires only that the notification to leave be reasonable, not the underlying reason for making the request." *Dressler v. Rice*, 739 Fed.Appx. 814, 821 (6th Cir.2018); *State v. Gish*, 4th Dist. Athens No. 94 CA 1612, 1994 WL 693921, *1 ("[t]he elements of R.C. 2911.21, criminal trespass, do not require that the owner of private property establish why he wants a defendant to leave the premises," but the statute "only requires that the alleged trespasser refuses to leave the premises when told to do so"). Accordingly, neither the sufficiency nor the reasonableness of Bhatti's reasons for asking Bennett to leave constitute a defense to Criminal Trespass.

{¶21} The sole assignment of error is without merit.

{¶22} For the foregoing reasons, Bennett's conviction for Criminal Trespass is affirmed. Costs to be taxed against the appellant.


JOHN J. EKLUND, P.J.,

FREDERICK D. NELSON, J., Ret., Tenth Appellate District, sitting by assignment,

concur.

7

Case No. 2022-L-007